UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA E. S.-M., an Individual,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>Defendant. | Case No.: 5:18-01991 ADS<br><br>MEMORANDUM OPINION AND ORDER OF REMAND |

# I. **INTRODUCTION**

Plaintiff Linda E. S.-M.[1] ("Plaintiff") challenges Defendant Andrew M. Saul[2], Commissioner of Social Security's (hereinafter "Commissioner" or "Defendant") denial of her application for a period of disability and disability insurance benefits ("DIB").

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] On June 17, 2019, Saul became the Commissioner of Social Security. Thus, he is automatically substituted as the defendant under Federal Rule of Civil Procedure 25(d).

For the reasons stated below, the decision of the Commissioner is REVERSED and REMANDED.

II. **FACTS RELEVANT TO THE APPEAL**

A review of the entire record reflects certain uncontested facts relevant to this appeal. Prior to filing her application for social security benefits, Plaintiff last worked on or about July 1, 2013, the alleged disability onset date. (Administrative Record "AR" 18, 44, 177, 199). She alleged disability based on the effects of back, knee, hip, and joint pain, fibromyalgia, trigeminal neuralgia[3], and breast cancer treatments (AR 21, 202-03, 209, 211, 215). Plaintiff's employment history indicates that she worked as an executive assistant for a healthcare company until her cessation of work in 2013. (AR 67, 69, 195, 203-04).

On June 28, 2015, Plaintiff's husband of 22 years completed a "FUNCTION REPORT – ADULT – THIRD PARTY" provided by the Social Security Administration (the "Agency"). (AR 219-26). The form asked him to provide detailed information about Plaintiff's: (1) illnesses, injuries, and conditions; (2) daily activities; and (3) abilities. (Id.) On that same day, Plaintiff completed a similar "FUNCTION REPORT – ADULT" provided by the Agency, attesting to the same categories of information. (AR 227-35).

Before the administrative hearing, Plaintiff's friends and family submitted letters to the Agency detailing their observations of Plaintiff's condition. Plaintiff's friend of 25

---

[3] Trigeminal neuralgia "is a chronic pain condition that affects the trigeminal or 5th cranial nerve, one of the most widely distributed nerves in the head . . ." and "causes extreme, sporadic sudden burning or shock-like facial pain that lasts from a few seconds to two minutes per episode[.]" Elliott v. Life Ins. Co. of N. Am., Inc., 2019 WL 2970843, at *3 (N.D. Cal. July 9, 2019) (internal quotation marks and citations omitted).

years, also a nurse, submitted a letter dated October 10, 2016, detailing the decline of Plaintiff's physical and mental state as a result of her impairments. (AR 247-49). Plaintiff's sister-in-law, Brenda M., submitted an October 13, 2016 letter detailing her observations of Plaintiff's condition. (AR 252). Plaintiff's husband also submitted a letter dated October 22, 2016 (AR 251), as did Plaintiff's 39-year-old son dated March 6, 2017 (AR 278-79). Plaintiff's daughter and step-daughter also submitted undated letters. (AR 276-77).

At the administrative hearing, Plaintiff testified that she is almost 62 years old and cannot work from the residual effects of her condition and various impairments. (AR 49-60, 75). She testified about the symptoms from her breast cancer, knee replacement, fibromyalgia, back aches, joint pain, and nerve pain in her face. (AR 50-60). Plaintiff testified that her impairments also cause tenderness in her arms and legs, difficulty living, and difficulty with prolonged ambulation. (AR 58-60). Plaintiff also stated that she experiences dizziness and impaired mobility due to the side effects of her medication. (AR 51, 55).

Plaintiff's husband also appeared at the hearing and testified about his personal observations of, and experiences with, Plaintiff. (AR 61-63). He testified that he feels "handcuffed" in his ability to help her because of the severity of her symptoms. (AR 61). He explained the frustration she feels because "she's not contributing to life." (Id.) He testified that he knows it's time to medicate because she "cries out," and he described her fears of becoming addicted to the pain medication. (AR 62). He said she is "not her normal self" and "loopy" when she takes her narcotic pain medication. (Id.) He testified that Plaintiff cannot do what she used to do, and the only thing he can do is try to console her. (Id.).

Plaintiff's sister-in-law, Brenda, testified that Plaintiff can no longer participate in activities they did together, from shopping, to attending fairs, to playing cards, among other activities. (AR 64). Brenda testified about Plaintiff's physical condition, mental health, and overall quality of life. (AR 64-65).

### III. PROCEEDINGS BELOW

#### A. Procedural History

Plaintiff filed a claim for Title II social security benefits on March 3, 2015, alleging disability beginning July 1, 2013. (AR 16, 44, 177-78). Plaintiff's DIB application was denied initially on May 28, 2015 (AR 89), and upon reconsideration on December 14, 2015 (AR 119). A hearing was held before ALJ Josephine Arno on March 10, 2017. (AR 43-78). Plaintiff appeared and represented herself at the hearing. (AR 36-39). As mentioned, she testified (AR 49-60, 63-64), as did her husband (AR 61-63), and sister-in-law (AR 64-65). Vocational expert Sonia Peterson also testified. (AR 66-73).

On October 4, 2017, the ALJ found that Plaintiff was "not disabled" within the meaning of the Social Security Act.[4] (AR 16-28). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on August 6, 2018. (AR 1-5). Plaintiff then filed this action in District Court on September 18, 2018, challenging the ALJ's decision. [Docket ("Dkt.") No. 1].

---

[4] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

1  On February 6, 2019, Defendant filed an Answer, as well as a copy of the Certified
2  Administrative Record. [Dkt. Nos. 15, 16]. The parties filed a Joint Stipulation on July
3  3, 2019. [Dkt. No. 22]. The case is ready for decision.[5]

### B. Summary of ALJ Decision After Hearing

In the ALJ's decision of October 4, 2017 (AR 16-28), the ALJ followed the required five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act.[6] 20 C.F.R. § 404.1520(a)(4). At **step one**, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since July 1, 2013, the alleged onset date. (AR 18). At **step two**, the ALJ found that Plaintiff had the following severe impairments: (a) trigeminal neuralgia; (b) history of breast cancer, status post left breast partial mastectomy; (c) fibromyalgia; (d) obesity; (e) status post right knee replacement; (f) lumbar spine degenerative disc disease; (g) left knee arthritis; (h) hypertension; and (i) hypertensive heart disease. (AR 18-20). At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR

---

[5] The parties filed consents to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), including for entry of final Judgment. [Dkt. Nos. 8, 9].

[6] The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled: Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two. Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate. Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four. Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five. Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled. Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (citing 20 C.F.R. §404.1520).

Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525[,] and 404.1526)." (AR 20-21).

The ALJ then found that Plaintiff had the Residual Functional Capacity ("RFC")[7] to perform light work as defined in 20 C.F.R. § 404.1567(b)[8] except:

> she can stand or walk for two hours in an eight-hour workday; she is never able to climb ladders, ropes, and scaffolds; she may occasionally climb ramps or stairs; she can occasionally balance, stoop, kneel, crouch, and crawl; she can occasionally push and pull with the bilateral lower extremities; [and] she may have no exposure to vibration, unprotected heights, and moving mechanical parts.

(AR 21).

At **step four**, based on Plaintiff's RFC and the vocational expert's testimony, the ALJ found that Plaintiff was unable to perform her past relevant work as an administrative clerk. (AR 26).

At **step five**, the ALJ found that Plaintiff is "an individual of advanced age," she has at least a high school education, can communicate in English, and has acquired skills from past relevant work. (AR 26). The ALJ further found that, "[c]onsidering the [Plaintiff]'s age, education, work experience, and [RFC], the [Plaintiff]'s . . . acquired

---

[7] An RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[8] "Light work" is defined as

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b); see also Rendon G. v. Berryhill, 2019 WL 2006688, at *3 n.6 (C.D. Cal. May 7, 2019).

work skills . . . are transferable to other occupations with jobs that exist in significant numbers in the national economy." (Id.) The ALJ accepted the vocational expert's testimony that Plaintiff would be able to perform the representative occupations of: Receptionist (Dictionary of Occupational Titles ("DOT") 237.367-038); Appointment Clerk (DOT 237.367-010); and Data Entry Clerk (DOT 203.582-054). (AR 27). As such, the ALJ found that Plaintiff was "not disabled," as defined in the Social Security Act, at any time from July 1, 2013, through the date of the ALJ's decision. (AR 27-28).

## IV. ANALYSIS

### A. Issues on Appeal

Plaintiff raises three issues for review: (1) whether the ALJ properly considered her subjective statements of record and those of her third-party supporting witnesses; (2) whether the ALJ properly considered the relevant medical evidence in assessing the RFC; and (3) whether the ALJ's transferrable-skills analysis is supported by substantial evidence of record. [Dkt. No. 22 (Joint Stipulation), p. 4][9]. For the reasons below, the Court agrees with Plaintiff regarding the ALJ's failure to properly consider the third-party testimony and statements of record, and remands on that ground.

### B. Standard of Review

A United States District Court may review the Commissioner's decision to deny benefits pursuant to 42 U.S.C. § 405(g). The District Court is not a trier of the facts but is confined to ascertaining by the record before it if the Commissioner's decision is based upon substantial evidence. Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (District Court's review is limited to only grounds relied upon by ALJ) (citing Connett v.

---

[9] The Court reorders the issues to track the ALJ's decision and provide background and context to Plaintiff's claim of disability.

Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)). A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). However, the Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citation omitted).

### C. The ALJ Failed to Properly Consider the Third-Party Testimony and Statements of Record

Plaintiff asserts that the ALJ improperly discounted the testimony and statements from her family, and friends. [Dkt. No. 22, pp. 11-14]. Defendant contends

that the ALJ appropriately found the third-party testimony inconsistent with the overall evidence of record. [Dkt. No. 22, p. 19].

### 1. Legal Standard for Evaluating Third-Party Testimony

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006)); see also 20 C.F.R. § 404.1513(a)(4). Friends and family members in a position to observe symptoms and activities are competent to testify as to a claimant's condition. See Diedrich v. Berryhill, 874 F.3d 634, 640 (9th Cir. 2017). Such testimony "cannot be disregarded without comment." Bruce, 557 F.3d at 1115 (quoting Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)); Robbins, 466 F.3d at 885 ("[T]he ALJ is required to account for all lay witness testimony in the discussion of his or her findings."). When rejecting lay witness testimony, an ALJ must give specific reasons germane for discounting the testimony. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009).

### 2. The ALJ Failed to Provide Germain Reasons for Discounting the Third-Party Testimony and Statements of Record.

Having carefully reviewed the record, the Court finds that the ALJ failed to articulate germane reasons for discounting the third-party testimony and statements. The ALJ gave "little weight" to the multiple and varied third-party testimony, including the third-party function report and the letters, because: (1) they "reflect the limitations expressed in [Plaintiff's] testimony," which the ALJ "found to be inconsistent with the overall evidence of record"; (2) on the issues of diagnosis, severity of symptoms, or side effects of medications in relationship to Plaintiff's ability to work, "the opinion of a

layperson is far less persuasive . . . than are the opinions of medical professionals"; and (3) they were not supported by clinical or diagnostic medical evidence.[10] (AR 23).

First, the ALJ's conclusion that the third-party evidence "reflect[ed]" Plaintiff's testimony and rejected it for the same reasons she discounted Plaintiff's testimony, is insufficient. (AR 23). While some of the testimony overlapped Plaintiff's testimony, that corroboration would be reason to think that Plaintiff and the supporting third parties were telling the truth about her condition, not a germane reason for discrediting their statements. More importantly, the testimony, function report, and letters were <u>not</u> entirely reflective of Plaintiff's testimony. For example, Plaintiff's adult son explained in his March 2017 letter that he now lives about 400 miles from his mother, and thus only sees her four to five times a year. (AR 278). He said this put him in a "unique" position to "really see the degradation of [his] Mother's health with every visit." (AR 278). From this viewpoint, which could not have been "reflect[ive]" of Plaintiff's own subjective testimony, he described effects only he could perceive, such as the degradation of his mother's demeanor, facial expressions of pain and pain in her voice, and seeing "[w]ith every visit . . . the pain getting worse." (AR 278-79). Further, Plaintiff's sister-in-law's testimony at times described limitations more extreme than Plaintiff alleged. Plaintiff denied depression at the hearing, but Brenda interjected that she disagreed based on her independent observations of Plaintiff. (AR 50, 65). Brenda also explained more restrictive limitations in Plaintiff's daily activities, such as her ability to cook and get in

---

[10] Notably, the Commissioner attempts to defend only the first reason. [Dkt. No. 22, p. 19]; <u>see, e.g.</u>, <u>Kinley v. Astrue</u>, 2013 WL 494122, at *3 (S.D. Ind. Feb. 8, 2013) ("The Commissioner does not respond to this [aspect of claimant's challenge to the ALJ's credibility determination], and it is unclear whether this is a tacit admission by the Commissioner that the ALJ erred or whether it was an oversight. Either way, the Commissioner has waived any response.").

and out of her trailer, even describing "special steps" they had to purchase just for her to be able to board the trailer. (AR 55, 57-58). Indeed, the ALJ specifically restricted Brenda's testimony to what "we haven't already talked . . . about[.]" (AR 64).

Accordingly, these independent observations and amplifications of Plaintiff's testimony were not entirely duplicative of Plaintiff's testimony, and therefore could not be discounted for the same reasons the ALJ discounted her testimony. See, e.g., Buckard v. Astrue, 2010 WL 5789044, at *17 (D. Or. Dec. 7, 2010) ("Far from 'parroting' [claimant]'s allegations, the [third-party] witnesses described independent observations of [claimant]'s physical condition."). The ALJ failed to identify, compare, or otherwise comment on these and other statements, and articulate how they related to Plaintiff's testimony. See, e.g., Brown-Hunter v. Colvin, 806 F.3d 487, 494 (9th Cir. 2015) (as amended) (ALJ must identify "which testimony she found not credible, and . . . explain [] which evidence contradicted that testimony." (emphasis in original)); Stephens v. Colvin, 2014 WL 6982680, at *7 (N.D. Cal. Dec. 9, 2014) (ALJ improperly disregarded claimant's mother's third-party statements by failing to comment on her testimony); Lewis v. Astrue, 2009 WL 2044661, at *2 (C.D. Cal. July 8, 2009) (finding "not sustainable" ALJ's rejection of third-party function report because it appeared to be no more than "a parroting of the subjective complaints already testified to by the [Plaintiff]"). Thus, the first reason is not a germane reason for discounting the third-party testimony and statements.

Second, the ALJ's reasoning that the third parties, as laypeople, were "far less" persuasive than medical professionals is legally deficient. (AR 23). As mentioned, friends and family members who are in a position to observe a claimant's symptoms and daily activities are deemed to be competent to testify as to those symptoms and

-11-

activities. See Diedrich, 874 F.3d at 640; Dodrill v. Shalala, 12 F.3d 915, 919-19 (9th Cir. 1993). The statements do not contain diagnosis or medical findings because the very purpose of third-party testimony is to obtain the lay witness's subjective impression of claimant's abilities and limitations. Thus, the ALJ improperly discounted the testimony and statements for this reason. See Dallas v. Comm'r Soc. Sec. Admin., 2017 WL 4242028, at *5 (D. Ariz. Sept. 25, 2017) (ALJ improperly disregarded function report because third party was not a doctor trained to make observations about claimant's limitations); Augg v. Colvin, 2016 WL 1388054, at *5 (W.D. Wash. Apr. 8, 2016) ("There is no requirement that a lay witness be 'medically trained to make exacting observations.' Nor should there be given that lay witnesses are by definition not medical professionals."); Earhart v. Colvin, 2015 WL 2368597, at *4 (D. Or. May 18, 2015) (noting Commissioner's concession that third-party's lack of medical training was not a valid reason for rejecting testimony).

The third and final reason offered by the ALJ, which the ALJ said was the "[m]ost important" reason for discounting the third parties, is similarly inadequate. (AR 23). A lack of support from the "clinical or diagnostic medical evidence," (id.), is not a proper basis for disregarding lay witness' observations. Diedrich, 874 F.3d at 640 (quoting Bruce, 557 F.3d at 1116 ("Nor under our law could the ALJ discredit [the witness's] lay testimony as not supported by medical evidence in the record.")). That lay testimony and third-party function reports may differ from medical records alone "is precisely why such evidence is valuable at a hearing." Diedrich, 874 F.3d at 640; Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996) (ALJ erred by rejecting testimony of claimant's family members about claimant's symptoms because medical records did not corroborate those symptoms); Bray v. Berryhill, 2018 WL 3076919, at *9 (C.D. Cal. June 19, 2018) ("[T]o

the extent the ALJ determined that the [third-party function r]eport should be discounted based on a lack of support from the medical records, this was not a germane reason to give 'little weight' to [friend's] observations."); Stewart v. Astrue, 2012 WL 487467, at *6 (C.D. Cal. Feb. 15, 2012) (ALJ's statement that third-party statements were "not supported by the clinical or diagnostic medical evidence," without more, is not a sufficiently specific reason to reject statements).

Accordingly, the ALJ did not rely on germane reasons supported by substantial evidence to discount the third-party testimony and statements of record. The Court cannot conclude that the ALJ's error was harmless. The ALJ's decision lacks any "meaningful explanation" based on specific evidence in the record for rejecting testimony and statements. See, e.g., Brown-Hunter, 806 F.3d at 492 (ALJ's failure adequately to specify reasons for discrediting testimony "will usually not be harmless"). Because of the significant functional limitations reflected in the third-party testimony, report, and letters, the Court cannot confidently conclude that no reasonable ALJ, when fully crediting the third parties, could have reached a different disability determination. Stout, 454 F.3d at 1055-56; Stephens, 2014 WL 6982680 at *7 (improper rejection of third-party testimony was not harmless because, if credited, it could support a finding that claimant is disabled).

### D. The Court Declines to Address Plaintiff's Remaining Arguments

Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments. See Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); see also Alderman v. Colvin, 2015 WL 12661933, at *8 (E.D. Wash. Jan. 14, 2015) (remanding in light of interrelated nature of

ALJ's decision to discount claimant's credibility and give appropriate consideration to physician's opinions, step-two findings, and step-five analysis); <u>Augustine ex rel. Ramirez v. Astrue</u>, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand."). Because it is unclear, in light of these issues, whether Plaintiff is in fact disabled, remand here is on an "open record." <u>See</u> <u>Brown-Hunter</u>, 806 F.3d at 495; <u>Bunnell</u>, 336 F.3d at 1115-16. The parties may freely take up all issues raised in the Joint Stipulation, and any other issues relevant to resolving Plaintiff's claim of disability, before the ALJ.

### E. **Remand For Further Administrative Proceedings**

Remand for further administrative proceedings, rather than an award of benefits, is warranted here because further administrative review could remedy the ALJ's errors. <u>See</u> <u>Brown-Hunter</u>, 806 F.3d at 495 (remanding for an award of benefits is appropriate in rare circumstances). The Court finds that the ALJ failed to properly evaluate the third-party testimony and statements. On remand, the ALJ shall properly review and evaluate the third parties in conjunction with Plaintiff's testimony and other subjective statements, and reassess Plaintiff's RFC. The ALJ shall then proceed through steps four and five, if necessary, to determine what work, if any, Plaintiff is capable of performing.

## V. **ORDER**

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for further proceedings consistent with this Order. Judgement shall be entered accordingly.

DATE: March 19, 2020

                            /s/ Autumn D. Spaeth
                         THE HONORABLE AUTUMN D. SPAETH
                         United States Magistrate Judge